21-2106 and then 21-2107, Alvarado and I'll be aligned for help. Just hang on just for a moment. Quieting down. So whenever you're ready. Thank you. May it please the court. My name is Kara Miller from Virginia and am binder counsel for appellants in the Guzman matter. While marked related to the previous appeals, and I know there is a lot of information that has been discussed, this appeal is on the very discreet issue of remand. So I'm trying to focus. I will focus just on that. And even though there's a lot of other information that's been addressed, it's not directly relevant to the issue of remand here, which we respectfully submit should be granted. Appellants in the Guzman action have been litigating their class action lawsuit to recover statutory unpaid wages pursuant to New York statutes in state court since 2016. There were no grounds for federal jurisdiction over that action and defendant appellee first Chinese never removed that action to federal court. Years later, as we know, appellants filed a motion in state court pursuant to the CPLR to partially vacate an arbitration award that purported to make threshold arbitrability determinations about their claims. This motion was predicated on court rulings and injunctions, which had already held that appellants claims were not arbitrable and that this determination was for the court and not the arbitrator to make. First Chinese then remove the action to federal court and appellant subsequent motion for remand was denied. While the term complete preemption is used with respect to section 301 of the LMRA, that term is somewhat misleading because it is well established that not every state claim that tangentially involves a CBA is preempted. There are only two limited circumstances where section 301 will confer federal jurisdiction over state law claims. The first is when the claims are founded directly on rights created by a collective bargaining agreement and the second when the claims are substantially dependent on analysis of a collective bargaining agreement. Neither of those two circumstances applies to the specific facts of this case. Appellant's motion to vacate was founded on rights created by courts, which made these threshold arbitrability determinations. I'm struggling a little bit with that argument because it almost sounds as if there are multiple layers of what's happening in this case and it almost feels like you're saying just look at the last step. Don't look at the first two, three steps because the idea that this claim doesn't require construing the CBA. If for no other reason than to be clear like okay, the CBA does not cover this, that seems to be enough under section 301 to bring this within the federal courts because I don't see how you can make the argument without construing the CBA. So respectfully, Your Honor, the decisions that the courts made were made by applying New York contract law. All we're talking about here are threshold arbitrability determinations. Those can be made without analyzing the CBA. Yes, Your Honor. Actually, that is the exact holding of the Chu decision which held that, which granted remand because the determination as to whether or not there was an agreement to be bound to arbitration in the first place was just simply looking at the agreement on its face and didn't need any substantial analysis to make that determination. Because you are drawing, you are making your argument by drawing upon the CBA, the language of the CBA. No, actually, we're making our argument to vacate predicated on court decisions which have already made these determinations. But it doesn't implicate the CBA. No, the CBA by this point is irrelevant because the courts have already held it's irrelevant. The CBA has no bearing on their statutory wage claims. But the idea that we only look to, the only thing in front of us are state cases. And we don't look to what the state cases are analyzing. Is that, I mean, and based on that, it's not appropriate for federal court? So the issue of federal subject matter jurisdiction is based on the specific grounds upon which we're moving. So there's no, I don't think there's any argument that the original action has any basis for federal subject matter jurisdiction. They're state statutory claims. The analysis that's looked at with respect to the very narrow window when you assess whether there is jurisdiction to remove is based on how the movement framed the motion. That's being, you know, for the basis for removal. But the movement can't just label something in a way that suggests it's not a federal case if what is really going on is, or that it touches on these kinds of issues over which we do have authority. I mean, it's not clearly, I understand what you're saying. It's based on what the movement is alleging. But it's not simply a matter of how the movement labels the case, is it? So it is and it isn't. So it is based on how the movement is labeling the case. But Section 301 preemption does say that you can't use that as an artful pleading to ignore federal subject matter jurisdiction to the extent it otherwise applies, which I acknowledge. But here the basis for our motion to vacate is not predicated on either of the two circumstances that still must be established for Section 301 to apply here. The claims that we make are not founded on rights created by a collective bargaining agreement. We're moving on courts that have held there is no collective bargaining agreement applicable at all to your claims. But then the second part is or requiring the construing of the collective bargaining agreement. And the determination that someone is not bound by the collective bargaining agreement was made by the courts in these very cases. So the Guzman action made that determination. Maybe that's not such an impressive argument. What about the CBA itself and the idea that in order to develop your arguments, you have to be looking at the CBA and what the CBA has to say? It doesn't matter at this stage what the CBA says, though, because- It doesn't matter? What do you mean? If the state court rules in your favor, that's the end of it. You don't have to worry about the CBA. The state court has already ruled in our favor in this case, saying that, right? I'm not saying that it's conditional. I'm saying they already have ruled in our favor. But they have ruled in lots of these cases. And if it's preempted, it's preempted. If it's not, it's not. And then we have to look to see the extent to which there's some reference and analysis of some sort to the CBA. So the determination of our motion, so the determination of the motion that we made does not require any further analysis. Because whatever the outcome of the motion to vacate is, that's not what we're looking at here. It's based on how we moved. And the only thing that needs to be looked at to make our motion is the decisions and injunctions that we attach. And partially that's because I think it's important to keep in mind that we moved before the state court. And there were appellate division decisions as well as the state court's own orders and injunctions that it is bound to follow. A state trial court doesn't need to reanalyze something if an appellate court- Because in every 301 preempted case, there could be a state decision that goes the other way, or in which the state courts are determining rights. That doesn't change the picture. So actually, it's a very good point that you bring up. Because every single Section 301 case that was cited by the district court and by appellate, not a single one ever addresses the facts here, which are that we are, A, talking about threshold arbitrability determinations, which distinguish most of these cases. This is not a case where there was an arbitration brought, and then after the arbitration went through, the plaintiff moved to vacate because they're upset with the arbitration. If the CBA references, and the CBAs themselves, reference the rules of the American Arbitration Association, which leaves the question of arbitrability to the arbitrator under the circumstances, then how can you, if you are referencing that CBA, aren't you? No. To having to refute that? No, Your Honor, because the court has already held that the decisions that the plaintiffs are moving upon were already established in the Guzman action. And so for them to simply enforce existing court orders doesn't require further substantially dependent analysis on a document that the court has already held, and appellate defendants have already held, has zero applicability to their claims, which are for statutory unpaid wage claims. Unless 301 preemption says that the outcome of the ruling should have been different. But 301 has to have one of these two circumstances apply. I understand that. The question is determining what those circumstances are, and whether those circumstances cover the situation. That's all. So I think that the reason that there were no labor agreements attached to our motion is because we're not asking the court to redetermine threshold arbitrability determinations. There's no point in doing that. Threshold arbitrability determinations have already been made. I guess I'm not really understanding why, and this was a disagreement with respect to the district court's determination, is that the district court made the decision that he had the ability to redetermine arbitrability at the federal level. And there has never been any case that says that Section 301 provides federal subject matter jurisdiction on threshold arbitrability determinations when such determinations have already been rendered. Moreover, those decisions under state court. That seems to go more, though, to the merits of what's at issue here, as opposed to just the, as you framed it, the narrow issue of whether or not this was properly, whether or not the case should be remanded back to state court. I mean, you can make the arguments about how the court should be considering it once it's here, but the idea that because the state courts have determined it, because this is, from your end, effectively an enforcement action, that that means that we don't look to anything else and that this doesn't fit within preemption, that that's the part I think that I'm having questions about. Well, that's actually the exact outcome that most of the courts that were relied upon by the district court made, which is that in most of these cases arose in the context of a signatory to a collective bargaining agreement and then a non-signatory that was alleged to be an alter ego. And those courts all held that because there had been no determination made with respect to the alter ego issue, that it would have jurisdiction for that limited purpose to make that determination of whether they were alter egos. But at the determination that there was no alter ego, so they were not bound to the collective bargaining agreement, the courts all agreed that Section 301 did not apply and therefore remand was warranted. That's exactly the circumstance we're already in today. All those courts simply had to make that initial threshold arbitrability determination. Once made, they're not bound to the relevant collective bargaining agreement. Section 301 preemption no longer applied and remand was warranted. And to what extent are we bound by the state, by the appellate division or whatever state court has ruled? I'm sorry. To what extent are we bound by the decision of the appellate division? I'm sorry, I'm not, rebound? I'm not sure I'm hearing. No, to what extent are we, the Second Circuit, bound by the state court decisions? I apologize, I couldn't catch that. Yes, Your Honor. Because the appellate court, the intermediate New York appellate court decisions all made determinations applying New York contract law to these threshold arbitrability determinations. On the question of whether or not there's preemption, I'll add to my question. On the question of whether there's preemption under 301, to what extent are we bound by the appellate division decision to the contract, runs to the contract? So this court is, Section 301 preemption, I would acknowledge is a slightly different issue. But even if the district court held that he had determination to redetermine the issue of arbitrability, at the point that that issue is even, although we don't agree it would be before the court at all, if it was before a district court, at that point, that court would be bound to then follow the intermediate appellate court decisions on those arbitrability determinations. And so we're in the exact same situation we are now, where if a district court had federal subject matter jurisdiction to make that determination. But a district court basically says, could say, according to your view, that look, I disagree with what the state court did, but my hands are tied by the appellate division. And that's what the law says, that's what the Sanchez versus Clipper Realty said, is that these state intermediate court determinations must be followed by this court as well as by the district court. And those arbitrability rulings would get us back to where we are now. We've heard arguments that Sanchez is distinguishable, but we don't agree with that. So, no, because the reason that it's relevant in this particular matter, is because this court held that those decisions applying New York contract law were binding on this court. That's the relevant part with respect to this case, which is that if these same, if this court has already found these intermediate appellate court decisions were binding, because they apply New York contract law, when this comes again for this matter, they would have to make the same determination and apply those same threshold arbitrability determinations. And we're exactly where we are now, which is there's no agreement to arbitrate binding on the Guzman appellants. And the court, not the arbitrator, had that authority, which is what the courts have held in this case, in the injunction. And arbitration occurred, federal arbitration occurred under 301. Would you be in a position to go to the state court and say, I don't know, the state, the federal court got it all wrong. It's 301 doesn't apply and we are, this is just a New York contract case. And we'd like you to entertain this case. So I think there's a distinction between the other matters that were previously before the court, which are moving to vacate the arbitration award itself. These matters under man were simply filed before the trial court at state court to enforce the decisions that were ready. You would agree under the hypothetical I just gave you that you wouldn't have a basis for going to the state court later on. You're saying it's just about the timing. I think it's a matter of the circumstances that led to the reason why, how the decision, how the case first started. In this particular action, the Guzman action, we've been litigating these claims for years. And the appellees made motions to compel arbitration. They lost. They have repeatedly lost. In the alliance matter, they appealed to the appellate division. And again, the appellate division affirmed the denial of arbitration. So it has to be narrowed. Again, this is limited to the Guzman action and then the Alvarado matter, which is coming up next. But these courts already denied arbitration. We were simply moving to ask the same court to please enforce your decisions. And so I think the posture that these need to be examined under is sort of very different from the previous appeals. So what's the recourse for a person who seeks arbitration, a union that seeks arbitration, in the event that a state court makes a decision that runs counter to them? I'm talking about a mine run arbitration. It's very clear that it's arbitrable under the CBA. But a party doesn't like that fact, even though they entered into it or are bound by it. And they go to the state court and manage to get the state court ruling to the effect, maybe wrongly decided that this is just a New York contract case. And therefore, we can decide it, and we can pursue, you can pursue your regular breach of contract claim here. And so under those circumstances, can you undo what, I mean, can your theory operate in a mine run case, which is everyone would say was arbitral, and everyone would say it's preempted? So, Your Honor, courts, New York state courts are not prohibited from deciding issues under a collective bargaining agreement or that involve arbitrability. They have equal jurisdiction. If that action that you are describing was removable at the time that it was started, because it clearly alleged claims pursuant to the CBA or involved a collective bargaining agreement, and they were bound to an agreement, I would assume it would be the right of the union or whoever the employer was to then, within this time period for removal, remove it. And so then it would be properly before, so that would never get to a state court decision in that case. If they wanted it to be removed to federal court, they could have done so. But if they didn't move within the time period to remove it, there's nothing wrong with the state court from making that decision because it has equal authority to do so. This case is very different because there was no ability to remove the case until we moved to vacate after years of litigation solely to try to enforce the repeated, again, orders and injunctions and intermediate appellate courts that have already held our claims are not arbitrable. And so the posture of this case is, therefore, very different, I'd say, from the example you provided. I just want to briefly discuss that the— Let me address that. I'm sorry. So I have a few more points, but I can address those with the points for the Alvarado action separately, because I know we tend to avoid repetition. Good morning, Your Honors. Christopher Rapoli of Jackson Lewis on behalf of Appellees Alliance for Health and First Chinese Presbyterian Community Affairs Home Attendant Corp. We'll refer to them as Alliance of First Chinese. We are prepared to argue matters 2106 and 2107 together as the facts and the procedural histories are similar. And the certified question to this court is the same in both. Your Honors, the district court properly found it had Section 301 jurisdiction over appellant's motions to vacate a labor arbitration award. This court should affirm that jurisdictional finding the sole issue in this interlocutory appeal for three reasons. First, the district court properly applied longstanding federal labor law precedent to find that resolution of appellant's motions to vacate the arbitration and stay the arbitration was substantially dependent on analysis of labor agreements. Second, the district court properly found that appellant's motion to vacate was based on rights created by those labor agreements. And third, to reverse the district court here would contravene longstanding bedrock federal labor principles. Turning to the first point, Judge Codal properly applied longstanding Supreme Court precedent, namely Caterpillar v. U.S., in finding, first, that resolution of the appellant's motion to vacate substantially depends on analysis, not just reference to, but analysis of labor agreements. As appellant stated, the motions to vacate and stay that were filed in state court were the basis for removal here. It's key to note that in these cases, the alliance in first Chinese litigation, the employer and the union agreed to delegate the arbitrability question to the arbitrator to decide. In those motions to vacate filed in state court, appellants directly attacked the arbitrator's power to decide on arbitrability, therefore calling into question analysis of the labor agreements, the 2015 MOA and the underlying CBA. So wasn't some aspect of the federal quality of this case apparent to you when you moved to compel arbitration in the state court in 2016? That gave me concern about the timeliness of your motion. I mean, things have gone fairly far along before we've needed to deal with this removability question. Could you address the timeliness of your motion, please? The appellants did litigate the matters for quite some time, but they were very careful to package their claims before the state court as wage hour claims. And in the motion to compel arbitration, that was something that the employer was asserting as a defense to the claims that were cited. And so based on Caterpillar v. US, one has to look to the claims that the plaintiffs are asserting in determining whether there's Section 301 jurisdiction. The first time- When you're seeking to compel arbitration, though, you've developed this concept that this really should be subject to arbitration, and it has the federal characteristics that the motion to vacate the arbitration award only kind of put in a different light. So this was not timely managed, maybe. We believe it was. There is a distinction, Your Honor, between a motion to compel arbitration, where the argument is that this is a dispute that should be arbitrated, something that can be readily determined from simply referring to the collective bargaining agreement, and the motion to vacate arbitration, which was filed here, which directly attacks the arbitrability question. And that requires analysis of the collective bargaining agreement, not just looking at the underlying delegation clause that referred to Section 3.1A of the Triple Eight Rules, as was discussed earlier, but also looking at the 2015 CB memo, and how those documents interact, and the extensive back and forth that we heard before about how those various documents relate to each other and how they shape the arbitrator's power. That shows, Your Honor, that the questions in this case, which are just jurisdictional, can't easily be resolved by simply referring to distinguishable state court cases. They can only be resolved by looking at the contents of the delegation clause, the 2015 MOA, and those various documents. So this case is distinguishable, for that reason, from the state court decisions. In the briefing that was cited by appellants, those decisions, almost to a decision, don't apply federal labor law principles as they're required to do when they're interpreting a collective bargaining agreement. For example, some of the decisions, I'm thinking of the Hiches and the Techeva decisions, don't even refer to the fact that there was a delegation clause, or if they do, don't acknowledge that the 2015 MOA was incorporated into the underlying labor agreements. Those cases applied garden-variety contract principles. But you're just saying they're wrong. We don't believe that they're entitled to deference, because this Court has said time and time again. But we can decide they're wrong. That's one way of putting it, Your Honor. We think that they're not entitled to deference, because as this Court has stated on numerous occasions, the interest in Section 301 removal and preemption is in fashioning a common federal labor law. Those decisions simply didn't refer to federal labor law principles at all. They treated this case as a garden-variety contract case. And again, the sole question before this Court, as Judge Kodal properly recognized, is the jurisdictional one. And that's why substantial analysis of the CBA comes into it. That's the Court's test in Caterpillar v. U.S. And we believe Judge Kodal properly applied that test. He also properly found that resolution of these claims is based on rights created by the labor agreements. The Supreme Court in U.S. Steelworkers v. Enterprise ruled that the obligation of an arbitrator to act within the authority granted to him or her is created by the employer and the union that are agreeing in the collective bargaining agreement to delegate that authority to the arbitrator. And therefore, when the motion to vacate filed in state court attacked that power of the arbitrator to decide on arbitrability, it was based on rights created by the labor agreements in question. But I think, Your Honors, to our third point, the key question for this Court is what the effect would be if the appellants got the result that they seek here, which is to say that Judge Kodal was wrong. That would contravene longstanding bedrock federal labor law principles. The harm to industrial and labor relations would be significant. Your Honors asked questions in the earlier matter about what the impact would be on the arbitration award. Indeed, Arbitrator Scheinman has issued a merits award, and there have been payments made to individuals, including, we believe, those who were employed before the effective dates of the 2015 MOA. The jurisdictional finding being reversed would call that entire arbitration award and process into question. It would also, if this Court reversed the judge on the jurisdictional question, would seem to give primacy to the sort of garden-variety contract analysis that the state courts did as opposed to enforcing bedrock federal labor law principles, which this Court has said itself, and the Supreme Court has said, is the proper frame of reference in Section 301 cases. It's critical to note that not only are the appellants free because they were carved out of the arbitration process, but the appellants have never once in these matters moved or been granted class certification. So the harm to those individuals that they don't even represent would be significant, in addition to seeming to give primacy to those state court decisions that we believe are distinguishable. On the same basis, the Sanchez and Agarinova decisions are distinguishable, Your Honors. In neither of those cases was there a motion to vacate an arbitration award. And in Agarinova, it was very clear that the arbitrability question wasn't before this Court. In fact, Sanchez had a similar issue. The district court judge there specifically noted Judge Kodal's decision in these matters as being distinguishable because of that arbitrability question not being before the Court in Sanchez. So, Your Honors, I see that my time is closing. I would just say to reiterate that in this interlocutory appeal, resolution of appellants' motions to vacate was substantially dependent on analysis of the labor agreements and was based on rights created by those agreements. To avoid rendering Section 301 meaningless, this Court should apply those bedrock federal labor law principles and affirm the district court. Thank you. Thank you, Mr. Ruffoli. So, Ms. Miller, I think Mr. Ruffoli said that was your argument for both, which we appreciate. Is that your position? We're certainly happy to use the additional time if this Court has additional questions in the other matter, but the arguments will be the same in both, subject to what the appellant might argue now. Okay. All right. So, Ms. Miller, if you can- Do you want to reserve your right in the other case to come back in case it's necessary? I certainly would. I think that's an excellent suggestion, Your Honor, and we'll certainly listen to what the appellant has to say. Okay. I can sort of try to address a rebuttal on everything at this point, and at the end, if it's acceptable, the Court will let you know if I have no further arguments that need to be raised. If you make a new argument and he has to answer it, then you get a chance to rebut. Thank you. Thank you. Okay. Thank you. So I just want to address a few things that were mentioned. First is just the hypocrisy, honestly, of arguing that labor agreements are applicable and apply when the entire premise of the reason this action has been proceeding in state court for years and every single one of the decisions has already held in the actions, is that no labor agreements are applicable to the dispute. The only labor agreement that was applicable, potentially, was the CBA, and it is universally determined that that doesn't govern statutory wage claims, and therefore no labor agreement has any bearing on this action, which has been proceeding in state court since 2016. So now after losing motion to compel, after motion to compel, after getting injunctions, after losing at the appellate division, for someone to come and stand and say this case now is all about labor agreements is frankly, it's just a perverse carrying out of justice, honestly. And it's frustrating because all we have been trying to do is litigate the claims that are not bound to any arbitration, and after trying to move to enforce those decisions in the very court that rendered those decisions, and the exact arguments that are being made by appellee now were made during the motions to compel arbitration before the trial court. They were made at the appellate division in the alliance matter by the appellees in that case. And those arguments were all rejected. And so to say that- So you're saying essentially that there's no difference between a motion to vacate under these circumstances than a motion to compel? Correct, Your Honor, only because- A motion to vacate does require, I think, but does it not, a reference to the arbitration brief? No, and that's exactly why in those multiple cases that are cited in the briefs, those alter ego cases, once that determination was made that they're not bound to the arbitration agreement, section 301 didn't apply because nothing further needs to be interpreted. They're not bound to the labor agreement pursuant to which that arbitration was held, and those were motion to vacate cases where the company said, I'm not bound to that labor agreement. I'm moving to vacate on that limited basis. We're not touching the substance of the arbitration, nothing else, just the fact that we are not bound to that agreement, and so we're moving to vacate. And once that court determined, you're right, you're not bound, section 301 no longer applied. There was no longer a dispute about a labor agreement. They're not bound to the labor agreement at all. There is certainly an arbitration, legitimate arbitration that existed, that covered the, you know, post the 2015 MOA in place. We're not trying to have any say on the validity of the arbitration outside of what we're moving for in this particular appeal and in the, you know, the other appeal, which is in these particular cases, we are moving to vacate on the grounds that the courts have already held. Our claims are not subject to the arbitration. And so I think that's a really fundamental distinction. I also want to briefly state that federal labor law doesn't apply to threshold arbitrability determinations. So all these arguments about federal labor law applying in section 301, all technically true, except when you're talking about are you bound to the agreement in the first place and are you bound to arbitrate your claims. Those scope threshold arbitrability determinations are made pursuant to New York State contract law. Federal law does not have anything, does not have involvement in those determinations. So it's the, that is why the intermediate appellate court decisions and the court decisions that have been issued and injunctions in these cases would have to be applied, even if this matter were to go before the district court just for the purpose of redetermining arbitrability, those decisions would still be bound, they would be bound to be followed and we'd be in the exact same place we are now. I also want to say that the arguments with respect to the other appeal, class action and the arbitration award, I'm not going to address those because frankly I don't think they're relevant to the specific appeal that we're dealing with, which is just the motion to remand, so I'm not going to address substantive arguments raised with respect to the other appeal. And I want to briefly just point out that in the notice of removal that appellees made, they argue that the reason section 301 preemption applied is because plaintiff's order to show cause requires court interpretation of an arbitration award pursuant to the CBA. And that's on the record A11 on that page of their notice of removal. And I think it's important because many of their arguments pertain to the fact that an arbitration award was issued pursuant to a CBA. We're not disputing that. It doesn't matter for purposes of section 301 jurisdiction on the grounds that we move that we're not bound to any collective bargaining agreement. Our claims are not arbitrable. Section 301 doesn't confer jurisdiction simply because someone else may have a valid arbitration pursuant to a collective bargaining agreement. That's not why we're here. We're just simply not a part of that. And on those grounds, section 301 can't force us into federal court. This is not a labor matter. This is a statutory wage case that has been proceeding for years in both of these actions. And for those reasons, I will give up the remaining time on any of the actions, unless there's anything further. Thank you. And Mr. Rapule, are you? I just had two very brief points to make, and then I'll sit down, Your Honors, and send back the rest of my time to the court. It's very important to note for this jurisdictional analysis, which is the only question that's before this court, whether there was section 301 jurisdiction, it's very important to note that in the motion to vacate filed in state court, appellants didn't just argue that they aren't bound to the arbitration award. They attacked the arbitrator's power to decide on arbitrability. That's set, because the employer and union did delegate the power to the arbitrator, that's set by the labor agreements. You can't resolve the motion to vacate without analyzing those labor agreements. And it's the appellants that opened that door by filing that motion to vacate in state court. That's what distinguishes this case from the state court cases and some of the federal court cases that were cited. You agreed that on the face of the complaint that was filed, the case was not removable. That's correct, Your Honor, and that's because it was packaged, presumably, in such a way to not- Well, they were seeking rights under state law only, right? That's correct, and that isn't disputed. What's certainly clear, though, is that once the motion to vacate was filed, resolution of that motion substantially depended on analysis of the labor agreements. All right. All right, thank you both. Thank you. Thank you, all of you. We'll take the cases under advisement.